Albert Penn v. Commissioner. Ralph Penn v. Commissioner.
Penn v. Commissioner
Docket Nos. 24254 and 27550.
United States Tax Court
1952 Tax Ct. Memo LEXIS 131; 11 T.C.M. (CCH) 776; T.C.M. (RIA) 52243; July 28, 1952
*131 Gift taxes. - Value of shares of closely held stock on dates of gifts, determined. Gift tax: Exemptions. - Petitioners claim exemptions undiminished by the value of reported gifts in trusts in 1934 on the ground that they were not valid completed gifts. Held, that the 1934 gifts of income from the trusts were completed taxable gifts notwithstanding the fact the grantor remained taxable on such income under the doctrine of the Clifford rule. Lockard v. Commissioner, 166 Fed. (2d) 409, followed. Charles J. Munz, Jr., Esq., and Sidney R. Reed, Esq., both of 608 S. Hill St., Los Angeles 14, Calif., for the petitioners. H. A. Melville, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, *132 Judge: These consolidated proceedings involve deficiencies in gift taxes determined by respondent in the amounts of $30,414.64 for 1946 against petitioner Albert Penn, and $9,635.89 for 1946 and $41,161.50 for 1947 against petitioner Ralph Penn. Each of the petitioners claims an overpayment of gift taxes for the years involved. The various assignments of error present the following questions: (1) the fair market value per share of the common capital stock of the Penn Electric Switch Company on the respective dates of gifts of such stock on July 27, 1946, December 2, 1946, and May 22, 1947; and (2) whether, for the purpose of determining the total amount of gifts for prior years and exemptions claimed, certain transfers in trust by each petitioner in 1934 constituted valid and completed gifts within the meaning of the applicable revenue act. The primary facts involved herein are embraced in a stipulation of facts and numerous exhibits made a part thereof. The testimony of expert witnesses and additional exhibits were adduced at the hearing. Findings of Fact The stipulated facts are so found and included herein by reference. The petitioner Albert Penn is an individual with *133 residence in Goshen, Indiana, and his gift tax return for 1946 was filed with the collector of internal revenue for the district of Indiana. The petitioner Ralph Penn, a brother of Albert, is an individual with residence in Grizzly Flats, California, and his gift tax returns for the years 1946 and 1947 were filed with the collector of internal revenue for the sixth collection district of California. During the taxable years 1946 and 1947 the petitioners were stockholders, officers, and directors of the Penn Electric Switch Company, an Iowa corporation with principal offices at Goshen, Indiana. During the years 1946 and 1947 the petitioners each made gifts of shares of the Penn Electric Switch Company common stock to certain donees on various dates and reported the value thereof per share on their respective gift tax returns for those years, as follows: Returned
Number
Value
Date
Donor
Donee
of Shares
per Share
7-27-1946
Albert
L. M. Penn
5000
$6.9325
7-27-1946
Albert
P. L. Penn
5000
6.9325
12- 2-1946
Ralph
R. S. Penn
4000
6.5112
5-22-1947
Ralph
R. S. Penn
4000
6.5112
5-22-1947
Ralph
R. S. Penn Trustee for donor's wife, Cora H. Penn
8000
6.5085
*134 The respondent determined that the fair market value of the above-mentioned common stock was $20 per share on each of the respective dates of the gifts thereof and issued notices of deficiency based upon that determination. The Penn Electric Switch Company, hereinafter referred to as Switch Company, was incorporated in July 1928 to take over the assets and business of a co-partnership of the same name. During the taxable years and for many years prior thereto, Albert Penn was president and chairman of the board of directors and Ralph Penn was vice president and treasurer and a director of that company. At all times the Switch Company has kept its books and records and filed its tax returns on a calendar year accrual basis of accounting. During the years material here, the Switch Company engaged in the business of manufacturing and selling automatic electric controls for various types of heating equipment, commercial refrigeration, air-conditioning equipment, pumps, air compressors, and engines. During the war years it produced certain war materials under Government contracts. The company's main plant at Goshen, Indiana, included a modern twostory office building and a one-story *135 monitor type factory. The company also operated a one-story plant at Indianapolis, Indiana, and its wholly owned Canadian subsidiary, Penn Controls, Ltd., operated a plant at Toronto, Canada. During 1946 and 1947 the Switch Company's authorized and outstanding capital stock consisted of Class A stock and Common stock, described as follows: "Class A stock - Authorized and outstanding 50,000 shares, $10 par value; cumulative preferential dividends $1.20 per share per annum; redemption price and preference in liquidation, $25 per share (aggregating $1,250,000 for the shares outstanding); convertible share for share into common stock at option of holder." "Common stock - Authorized 250,000 shares, $5 par value of which 50,000 shares are reserved for conversion of Class A stock; outstanding 100,000 shares." The Class A stock was originally sold to the public at $20.75 per share in 1936, through a Chicago brokerage firm, and during the taxable years and prior thereto it was listed on the Chicago Stock Exchange. The Class A stock was owned by 652 preferred stockholders on December 31, 1946 and by approximately the same number of stockholders on each of the basic dates involved herein. *136 In each of the years 1940 to 1946, inclusive, the Switch Company paid $60,000 in dividends on the Class A stock. The common stock, which has never been listed on any stock exchange, was held by 30 stockholders as of December 31, 1946, and by approximately the same number of stockholders on each of the basic dates involved. During all of 1946 and 1947 the outstanding 100,000 shares of Switch Company common stock were owned, 42,250 shares by Albert Penn and his immediate family, 41,960 shares by Ralph Penn and his immediate family, and the remaining 15,790 shares largely by directors, officers, and employees of the company. There were no sales of the common stock during 1945 and 1946, but during the months of February, March, and November 1947 four sales of common shares (varying in number from 30 to 500) were made totalling 815 shares, at a price of $10 per share in each instance. Those sales were made by and to persons either then or theretofore connected with the company as legal counsel, officer, or employee. For the indicated calendar years the book value of the Switch Company's outstanding common stock at the beginning of each year, after giving effect to the redemption value *137 of 50,000 shares of Class A stock of $25 per share, was as follows: Book Value
Year
of Common
1941
$236,472
1942
444,798
1943
692,655
1944
350,807
1945
409,537
1946
405,540
During the years 1941 to 1946, inclusive, the Switch Company followed a policy of paying unusally high salaries to its executives. The percentage of such salaries to the company's net profits, after taxes, for each of those years, was as follows: 43 per ment for 1941; 86 per cent for 1942; 81 per cent for 1943; 92 per cent for 1944; 103 per cent for 1945; and 29 per cent for 1946. For the indicated calendar years the Switch Company's net sales, gross profit on sales, net profit after Federal income taxes, and net profit per share on common after Class A dividends, were as follows: Gross Profit
Net Profit
Profit per Share
Year
Net Sales
on Sales
after Taxes
on Common
1941
$2,345,993
$1,116,110
$251,564
$1.92
1942
3,117,561
1,121,673
181,942
1.22
1943
4,429,978
1,259,410
219,066
1.59
1944
5,070,409
1,295,833
193,630
1.34
1945
6,212,441
1,260,600
172,071
1.12
1946
5,873,019
1,684,384
505,326
4.45
For the period of *138 twenty weeks ended May 18, 1947, the Switch Company had net sales amounting to $3,597.107; gross profit on sales amounting to $977,255; and net profit of $336,231 after provision for Federal income taxes. On its outstanding 100,000 shares of $5 par value common stock, the Switch Company paid dividends amounting to $100,000 in 1940; none in 1941; $50,000 in each of the years 1942, 1943, and 1944; and none in 1945 and 1946. In the fall of 1945 the Switch Company's board of directors considered the company's need for $500,000 additional working capital adequately to finance the anticipated post-war increase in volume of business. After turning down a proposal to issue 50,000 units of one share of new four and one-half per cent preferred with one share of common at a price of $33.50 per unit and retiring the outstanding Class A, the company negotiated for a public offering of common shares by the Chicago brokerage firm which had underwritten the Class A stock in 1936. In September 1945 that brokerage firm proposed that 50,000 common shares could be marketed satisfactorily at eleven times three year average earnings with an offering price to the public of $10.25 per share and the underwriter's *139 price to the company of $9 per share. That proposal was abandoned. In December 1945 the Switch Company entered into a Revolving Credit Agreement with a certain bank providing for a credit of not in excess of $500,000 in the aggregate at any one time and further providing, inter alia, that, except as to Class A stock, the company would not declare dividends on any capital stock in excess of 50 per cent of aggregate net earnings available for dividends and accrued after December 31, 1944. On March 1, 1947, the Switch Company entered into a Loan Agreement with a certain insurance company providing for a loan of $1,000,000 evidenced by promissory notes maturing serially on March 1, 1948 to 1957, with varying interest rates, the proceeds of the loan to be used to retire outstanding bank loans, pay the cost of additional plant and equipment and for other corporate purposes, and, further providing, inter alia, that the company would not declare any dividends upon its capital stock unless it met certain specified limitations, conditions, and requirements relating to the amount of dividends and the maintenance of a minimum working capital and ratio of current assets to current liabilities. *140 The fair market value of the Penn Electric Switch Company common stock was $14 per share on July 27, 1946 and $16 per share on December 2, 1946 and May 22, 1947. In 1934 Albert Penn transferred an interest in certain stock to two trusts for the benefit of his two daughters, Lois M. and Patricia Lou Penn, respectively. For Federal gift tax purposes he reported the gifts in trust at a value of $17,807.28 less $10,000, consisting of a $5,000 exclusion for each donee and apparently claimed $7,807.28 as a specific exemption. Subsequently, it was finally determined in Federal income tax proceedings, that the income of the trusts for 1934 and 1935 was taxable to Albert Penn individually. In 1934 Ralph Penn transferred an interest in certain stock in trust for the benefit of his wife Cora. He filed a Federal gift tax return for 1934 on which he reported the value of (1) income of a revocable trust and (2) relinquishment of right to revoke, in the amount of $19,057.28 after claiming an exclusion of $5,000. In Ralph Penn's gift tax return for 1946 the said sum of $19,057.28 was claimed as amount of specific exemption in determining net gifts subsequent to June 6, 1932, in computing his *141 net gifts for the year. Subsequently, it was finally determined in Federal income tax proceedings, that the income of the trust for 1934 was taxable to Ralph Penn individually. The proceedings above referred to were before the United States Board of Tax Appeals, namely, Albert Penn, docket numbers 90761 and 90762, Memorandum Opinion entered March 29, 1939 affirmed by C.A. 8, March 7, 1940 on authority of (Feb. 26, 1940); and Ralph Penn, docket number 93576, Memorandum Opinion entered April 13, 1940 citing In those proceedings the instruments, in final analysis, declared the grantor irrevocably trustee with respect to certain Penn Electric Switch Company common stock for a period of five years, unless sooner terminated by death of the grantor or beneficiary, to pay all the accrued or accumulated net income to the beneficiary absolutely and upon termination of the trust the corpus to revert to the grantor absolutely. It was held that because of the grantor's retained dominion and control he continued to be the owner of the corpus of the trust for purposes of section 22 (a) of the Revenue Act *142 of 1934 so as to render him taxable on the income of the trust. Opinion The first issue presents a factual question as to the fair market value, on the three basic dates, of the Penn Electric Switch Company common stock which was closely held, unlisted, and not the subject of any open market sales. The meaning of fair market value is well established as the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy or to sell and both being informed. In (C.A. 8, June 16, 1952) the Court said that in the absence of evidence of transactions of purchase and sale or of an open market for stock, "there is no single formula universally applicable in determining such value" and it is proper to consider all the circumstances connected with the corporation and further that, "* * * Among the factors that may properly be considered in determining the fair market value are corporate assets, corporate earnings, dividends, earning power of the corporation, prospects of the corporation, book value, bid and asked quotations, comparison with other stocks sold on the *143 market, and any other factors which an informed purchaser and an informed seller would take into account. * * *" In the instant case our ultimate findings of fact as to the fair market value of the Penn Electric Switch Company's common stock on the basic dates involved, represent conclusions based upon a consideration of the entire record including various factors embraced in the stipulation, but which are too numerous and detailed to set forth as findings herein, and also a weighing of the expert testimony adduced. The parties stipulated the primary facts involved, but differ as to the conclusions to be drawn therefrom. The witnesses for both parties used the method of capitalizing average earnings but obtained divergent results largely because of the rate of capitalization used, which they expressed as the price times average earnings. The petitioners' witnesses exhibited a lack of knowledge of the actual facts involved herein and placed emphasis, inter alia, upon their conclusion of poor management of Switch Company which was not evidenced by the record; upon the payment of high executive salaries which though true was nevertheless reflected in earnings; and upon general stock *144 market conditions rather than comparable stocks sold on the market. On the other hand, the respondent's witness, who was well qualified, considered and balanced all the various factors evidenced of record and testified as to reasonably comparable stocks sold on the market. We have concluded and found as a fact that the Penn Electric Switch Company common stock had a fair market value of $14 per share on July 27, 1946, $16 per share on December 2, 1946, and $16 per share on May 22, 1947. In finding the same values on the two latter dates we conclude that on the facts herein the Switch Company's increased earnings for the first 20 weeks of 1947 should not be projected through that year as a basis for establishing a higher value in May 1947 as compared with December 1946. With respect to the second issue petitioners contend that the transfers in trust in 1934 did not constitute valid completed gifts because the determinations in the prior proceedings were to the effect that the gifts lacked substance and that, therefore, petitioners are entitled to the exemption provided by law for the years here involved, undiminished by the reported value of gifts for 1934. Respondent contends *145 that the 1934 gifts of income from the trust were completed taxable gifts in that year notwithstanding the fact that the grantor remained taxable on such income under the doctrine of the Clifford case, supra. On authority of , affirming , we hold for respondent on this issue, which was submitted purely as a question of law and does not involve any question as to the correctness of the values of the gifts as reported or determined for the year 1934. The case of , relied on by petitioners is distinguished on its facts because there the decision rested upon a prior proceeding's determination that a purported transfer did not constitute a gift. Decision will be entered under Rule 50.